Given the limited time we have this morning, I would like to forego a discussion of the facts and focus on the three constitutional claims for which the District Court granted summary judgment against Mr. McCool. First, his Eighth Amendment claim for cruel and unusual punishment. Second, his claim for retaliation. And third, his due process claim. An Eighth Amendment claim has an objective and a subjective prong. The District Court granted summary judgment on the objective prong and did not reach the subjective prong. McCool stated two grounds for his Eighth Amendment claim. First, that he faced a risk of physical violence from non-Caucasian prisoners in the New Jersey prison system. How many years has he been there? He has been in New Jersey since 1999. So he's been there eight years or so? Nothing's happened to him except he got beaten up by a guard, is that right? That's correct, Your Honor. I would be very interested in your response to the government's claim that the statute of limitations is a bit of what is kind of the basis of your claim. Your Honor, the statute of limitations does come down after McCool was transferred to New Jersey. Part of his claim for injunctive relief is that the government has refused his request for compassionate transfer back to Arizona. So with respect, even if the statute of limitations argument of the government is accepted, McCool's claims are not barred here. Well, you say his claims aren't precisely which claims are not. None of those claims are, Your Honor. I just don't understand that, I guess. Okay. With respect to his Eighth Amendment claim, he's been denied compassionate transfer back to Arizona. Okay. With respect to his retaliation. And your theory there is that he was denied it because? He was denied compassionate transfer because his security classification is level 5. That's the security classification he was assigned while at Arizona. Now, kind of the basis of that is his claim that he has a right to visitation, which has been impaired, I gather. Two bases for the Eighth Amendment claim. The risk of attack and the loss of visitation. That's correct. Now, I don't think there's any authority that there's an absolute right to place a prisoner in a prison convenient to his relatives. Do you have any authority for that? No authority, Your Honor. It is a fact-intensive analysis. Part of our, the thrust of our argument on appeal is that the court accepted a bright line argument. And, you know, for when you look at the Eighth Amendment claim, that's a focus on the impact of his relocation to New Jersey on him and whether that is cruel and unusual punishment. With respect to his retaliation claim, there's a line of authority in the Ninth Circuit. It's Pratt v. Rowland and Rizzo v. Dawson, that if a prisoner is transferred for a retaliatory purpose, even if the court concludes that there's no constitutional right to place of imprisonment, that states a constitutional claim. And finally, with respect to the due process claim, as we've pointed out in our papers, we do not believe the Olin v. Wackenacona case sets a bright line rule that for purposes of finding a due process claim within state law, created by state law, that's a bright line test forbidding that. That's a fact-intensive test. We don't contend that the due process clause itself creates any rights in place of imprisonment. The retaliation claim would be barred, wouldn't it, by the statute? Well, the injunctive relief to return him because it is a continuing pattern of retaliation. He's not being permitted to return because he refuses to debride. The fact of the retaliation was known at the time of the transfer, which occurred just a couple of years before the suit was filed. Mr. McCrory contends that the continued refusal to permit compassionate return is an aspect of retaliation. I hear that, but my question was slightly different, and that is whether the retaliation claim is barred. Injunctive relief to cure the continued acts of retaliation would not be barred. And we have further contended in our papers, and I recognize there is not a tremendous amount of authority on the point, but that Mr. McCool's situation is one in which he has faced a systematic pattern of reprisals based on his refusal to debrief, and that that is a, it's analogous to a hostile work environment claim for purposes of statute of limitations. I recognize there's not a tremendous amount of authority on this point. In order to return to this Eighth Amendment claim, on appeal, the government has really abandoned the basis of the district court's holding, which is that there's no objective, there's no objective cruel or unusual condition from a risk of harm from non-Caucasian prisoners. Plainly under Farmer v. Brennan, the prison has a responsibility to protect Mr. McCool, and that Mr. McCool does not need to wait for an actual attack in order to bring this claim. What the government focuses on is the subjective prong. Was there deliberate indifference to his welfare? Well, there is a substantial amount of evidence in the record that there was. There is the transfer letter to New Jersey which says that New Jersey was chosen because of its non-Caucasian population. There is evidence from two prison officials. But that doesn't necessarily imply that there is a known individualized risk of harm, does it? In Farmer v. Brennan, the court held that one need not identify a specific individual or a specific kind of threat. But if there's an obvious risk of a threat from other prisoners, that implicates the Eighth Amendment. It's true that this letter of itself does not, in a weighing of the evidence, show that the prison officials necessarily sent him there to cause harm. Farmer v. Brennan says that even an obvious risk is sufficient because it's so difficult for a prisoner to show the state of mind of a prison. And in lying with an obvious risk, we have a circumstance where the prison said that they could identify McCool with tattoos, with objective criteria, with profiling as a member of the Aryan Brotherhood, yet they sent him intentionally to a non-Caucasian prison. And then we also have the statements of two prison officials. I thought he said that he was an Atlantic Braves, Atlanta Braves. And you're saying it's the Aryan Brotherhood. That's what the prison official said, Your Honor. I'm trying to suss out their state of mind. What do you have been safe where you've been sent to, Atlanta? I don't know, Your Honor. So in any event, this evidence just shows the conflict in evidence and that there was a genuine issue of material fact with respect to the government's state of mind in sending him there. And I would like to save the rest of my time for rebuttal unless there are specific questions. Yes, sir. Thank you. May it please the Court. I'm Kathy Stewart, and I'm representing the Department of Corrections officials in this matter. Would you like to address Judge Fletcher's question in reverse, that is, which claims do you contend are statutory, are part of the statute of limitations? Certainly, Your Honor. First of all, Mr. McCool has never challenged his validation itself. So statute of limitations or not, that's not an issue here. The discrete act of his transfer in 1999 would be clearly barred by the statute of limitations. And consistent with the Stanley v. Trustees of Cal State case, that discrete act is not somehow saved by virtue of the fact that Mr. McCool also is making claims about his continued incarceration in New Jersey up until the present time. Is there anything in the record that would suggest that their refusal to transfer him back to Arizona is because he won't allow himself to be debriefed? Your Honor, there is his inability or ineligibility, I will say, for a compassionate transfer back to Arizona, is a product of his classification as a security threat group member. That makes him ineligible pursuant to the policy, as it would any other security threat group member validated but unwilling to renounce his membership in the gang. So there's nothing in the record that suggests it's because of his unwillingness to debrief? Well, let me address that more directly. First of all, that would... That can take a yes or a no. Well, there is no evidence of that. And more importantly, what would be the incentive? McCool's unwillingness to renounce his membership in the gang maintains the status quo. It does not involve any further punishment. And quite honestly, it allows the Department of Corrections not to be faced with a decision that would not be risk-free. In other words, if he was to renounce and the department was to rely on the interview to convince itself of his sincerity, number one, of the possibility that he may need protection, number two, and to acquire whatever additional information may assist their general gang management tactics, and they were wrong, you know, that he was not sincere in fact, the rest of the staff and other inmates would be put at risk. His choosing not to debrief means nothing to the Department of Corrections. It eliminates the need for them to make a decision that could, as I say, carry risk in and of itself. So not only is there no indication that there would be a retaliatory motive in reacting to his unwillingness to debrief, but there is obvious evidence of a legitimate penological objective in maintaining him in a place where they determined his ability to influence the activities of other Aryan Brotherhood gang members would be diminished. So while McCool is not challenging his validation, notwithstanding some innuendo in the replacement briefing to that effect, it is the lens through which this court should view the remainder of his claims, and the only remaining claims to get to the statute of limitations would be his continued incarceration in New Jersey. It's important, I think, to differentiate between those cases involving disciplinary, segregation, or administrative segregation along the lines of Wilkinson from what occurred here. Mr. McCool spent about 18 months in solitary confinement. It's the conditions of solitary confinement addressed in Wilkinson that gave rise to the right to periodic reviews and the due process protections there. Mr. McCool, because of additional information that suggested he wasn't just a rank-and-file member, he was in fact a member of the elite leadership council of the Aryan Brotherhood, a fact that he has not contested and may in fact be proud of, it is that fact that led the department to not single him out, but to send him along with 14 other gang leaders to prison institutions where it was felt their ability to influence the activities of gang members would be diminished. New Jersey was certainly one of those in the case of Aryan Brotherhoods where, for obvious reasons, getting him out of an environment where there were a larger number of Caucasian inmates would be expected to diminish his influence. And I think, Judge Fletcher, you made an important observation. There is no evidence whatsoever that the mere racial composition of the prison in New Jersey has actually involved a substantial risk of harm. Even in the hearsay statements attributed to non-defendants in this case, they make no reference whatsoever to him facing any threat of any kind or harm inflicted by inmates, non-Caucasian inmates. What Mr. McCool is really asking this court to do is substitute its judgment for that of the Department of Corrections officials. According to the Supreme Court and many decisions of this court, appropriate deference is to be accorded of prison officials in matters of day-to-day fine-tuning of the conditions of confinement. This is precisely that kind of case. Mr. McCool had been identified as one of the leaders of the Aryan Brotherhood who was able, even in solitary confinement, to influence the activities of that gang in Arizona. And particularly here, where he's seeking injunctive relief and not monetary damages, it would be inappropriate for the court to essentially substitute its judgment for that of the prison officials. In the Bruce v. Yales case, a case in which there actually was some evidence of retaliation sufficient to preclude summary judgment, the court there felt injunctive relief, as opposed to nominal or compensatory damages, would be an inappropriate attempt to invade the authority of prison officials over such things as security of staff and inmates in a volatile environment. And if there are no other questions, I'll sit down. The ADC has attempted to articulate... Well, before I get into that, to answer the court's question, there is some evidence in the record that Mr. McCool's failure to debrief is what's preventing him from returning. That evidence is a letter that was sent to him. I believe it's in the record at 162, our appellate's record, appellate's record, that said that he's being denied transfer back because of his security classification. The only way to change that classification is to debrief. And in fact, that's what's in the books in the DO-806. What the government is... What the ADC has attempted to do is articulate a penological basis for the acts it's taken against Mr. McCool. And in doing so, it points to assertions that he's a leader of the Aryan Brotherhood, that he's a member of the... He's not challenging his classification. Isn't that correct? He is challenging his classification, or his claim is that his classification prevents him from returning. Well, that's a different thing from saying that his classification is incorrect. That's correct, Your Honor. He... You know, the validation of the classification occurred in 1997. Yeah. But the lack of the process is part of his claim. Because he's moving through the process, he may be able to change his classification. Okay, thank you, Mr. Shaw and Mr. Stewart. The matter just argued will be submitted next to your argument in Hogan.
judges: Fletcher, Rymer, Duffy